DONALD AMAMGBO, ESQ.
AMAMGBO & ASSOCIATES
7901 Oakport Street, Suite 4900
Oakland, California 94621
Telephone: (510) 615-6000
Facsimile: (510) 615-6025

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616

ORIGINAL
FILED

FEB - 5 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS PATRICK, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DELTA AIRLINES, INC, AIRTRAN HOLDINGS, INC., and AIRTRAN AIRWAYS, INC. <br><br> Defendants. | CASE NO. C10-00530 LB ADR <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

   1.   Dennis Patrick ("plaintiff Patrick"), individually and on behalf of all class members similarly situated, brings this action for treble damages and costs of suit pursuant to the antitrust laws of the United States against defendants Delta Airlines, Inc., AirTran Holdings, Inc. and AirTran Airways, Inc. ("defendants") and alleges the following:

### Nature of Claim

CLASS ACTION COMPLAINT                                                                                           1

2. Defendants provide passenger air services to customers who book travel on their airlines. This action stems from a conspiracy among defendants to charge customers for the first piece of luggage checked ("first bag fee") on their flights.

3. Defendants are each other's principal competitor on many passenger routes. Atlanta Hartsfield-Jackson Airport serves as the hub for both airlines, where they vigorously compete for air passenger service to and from this hub. Both airlines have a number of overlapping routes for which they have competed intensely for the business of consumers. Consumers have benefited from this competition in the form of lower prices.

4. Prior to entering into their unlawful agreement, the intense competition between defendants Delta and AirTran prevented either airline from charging a first bag fee for fear of losing substantial sales to the other airline. On or around November 2008, however, defendant Delta accepted defendant AirTran's invitation to collude on the imposition of a first bag fee. Since then, while demand for airline tickets has decreased, the defendants have increased prices to consumers by agreeing to engage in certain conduct that, if carried out unilaterally, would have gone against each defendant's independent business interests.

5. This complaint seeks damages and injunctive relief on behalf of plaintiff and a class of airline passengers (further defined below) who directly paid a first bag fee to the defendants in violation of the Sherman Act.

### Jurisdiction & Venue

6. This action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

7. The court has subject jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337(a) and sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391 and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, in that defendants in habit, transact business, reside, are found, or have an agent in this district and a significant portion of the

affected interstate trade and commerce described below has been carried out in this district.

## The Parties

9. Plaintiff Dennis Patrick is a resident of Napa County, CA. During the class period, he directly paid defendant Delta Airlines, Inc. a first bag fee for air travel within the United States and specifically to the Atlanta, Georgia area.

10. Defendant Delta Air Lines, Inc. ("defendant Delta") is a Delaware corporation with its principal place of business in Atlanta, Georgia. Prior to its acquisition of Northwest Airlines, defendant Delta was the third largest domestic airline in the United States with its principal hub located at Hartsfield-Jackson Airport, Atlanta, Georgia.

11. Defendant AirTran Airways, Inc. is a Delaware corporation with its principal place of business in Orlando, Florida and is a subsidiary of AirTran Holdings Inc. Defendant AirTran's principal hub is located at Hartsfield-Jackson Airport, Atlanta, Georgia.

12. Defendant AirTran Holdings, Inc. is a Nevada corporation with its principal place of business in Orlando, Florida and is the parent of AirTran Airways, Inc. AirTran Holdings, Inc. and AirTran Airways, Inc. are referred to collectively herein as ("defendant AirTran").

13. Defendants' anticompetitive activities were within the flow of and had a proximate, direct, substantial and reasonably foreseeable effect on interstate commerce. At all proximate, direct, substantial and reasonably foreseeable effect on interstate commerce. At all material times, defendants engaged in business across state lines and charged unlawful first bag fees to plaintiff and class members across state lines, in a continuous and uninterrupted flow of interstate commerce throughout the United States.

## Facts

14. Historically, the airline industry has engaged in price fixing. Said collusion has included but is not limited to invitations to collude and price-fixing through the

public-signaling of future pricing decisions with understanding competitors would follow suit. Defendant AirTran's invitation to defendant Delta to collude on the imposition of a first bag fee and defendant Delta's acceptance, constitutes a per se violation of the Sherman Act.

### Relevant Market

15. Defendants provide regularly scheduled service between certain cities of origin and cities of destination. Such origin-destination combinations are known in the industry as "city pairs." A domestic airline passenger service city pair served by defendants is the relevant product and geographic market for purposes of this action.

16. Alternatively, the relevant product and geographic submarkets for purposes of this action are Defendants' domestic airline passenger service city pairs served from Atlanta Hartsfield-Jackson Airport. Passengers traveling to and or from Hartsfield-Jackson Airport on a particular city pair route do not view service in alternative city pairs as a reasonable substitute; they are unlikely to substitute travel to a different destination in response to a fare increase for a city pair served from Atlanta.

17. Defendant Delta is the dominant competitor for city pairs served from Hartsfield-Jackson Airport, with a market share of approximately 70 percent of domestic flights in or out of the airport. Defendant AirTran is the second largest competitor for domestic city pairs served from Hartsfield-Jackson Airport, with approximately 25% of the market. Defendants collectively account for approximately 90% of the domestic airline traffic to and or from Hartsfield-Jackson. Accordingly, defendants have market power on city pairs served from Hartsfield-Jackson and thus they also have the power to control prices and exclude competition.

18. The previously defined relevant market and submarkets are in and or part of interstate commerce and defendants' actions in these markets substantially affect interstate commerce.

19. The relevant markets and submarkets at issue are highly concentrated and there are substantial barriers to market entry, including large up-front capital

requirements, economies of scale, customer loyalty, commitment contracts with business and restrictive practices limiting access to airports.

### Defendants Previously Engaged in Competition

21. Defendant AirTran positions itself as a discount airline – *i.e.*, an airline with low fees compared to its competition. Defendant AirTran is well positioned to offer low fees because it maintains a low cost structure. Defendant AirTran recently described itself as maintaining "industry leading non-fuel costs."

22. While the exact number of class members is unknown at this time, Plaintiff believes the identities of class members can be readily ascertained from defendants' books and records. Given the magnitude of the commerce involved, there is most likely thousands of class members geographically dispersed throughout the United States, making joinder of all members impracticable.

23. Defendant Delta has proven to be a formidable competitor to defendant AirTran. Atlanta Hartsfield-Jackson Airport serves as the principal hub for both defendants and the two airlines account for approximately 92 percent of airline traffic at the airport. Defendant Delta has consistently matched defendant AirTran's low price offerings to and or from Atlanta. The two airlines have a fierce rivalry and thus have consistently competed intensely over market share in the relevant market.

24. Vigorous competition between defendants yielded lower prices for consumers. This competition between defendants restricted airlines from imposing certain baggage fees on consumers.

25. Non-discount airlines have imposed a first bag fee of $15 on consumers for the first piece of luggage checked.

26. In contrast, prior to the beginning of the class period, neither defendant charged a first bag fee. Intense competition for consumers prevented either airline from imposing such a fee. Both defendants analyzed whether to charge a first bag fee but chose not to for fear of losing sales.

27. Other discount airlines include Southwest and JetBlue, defendant AirTran's discount airline equivalents; do not charge such first bag fees.

### Defendants Agree to Collude on First Bag Fees

28. In or about April 2008, defendant Delta announced it would acquire Northwest Airlines ("Northwest"), which charged a $15 first bag fee at the time. Shortly after acquisition of Northwest, defendant Delta stated it had "no plans" to charge consumers a first bag fee when asked whether it would begin such to conform its practices to Northwest's.

29. Unilaterally imposing a first bag fee on consumers would have been against defendants' economic self interests because of the loss of significant sales to its main competitor. But both defendants would benefit in the form of hundreds of millions of dollars a year in increased revenue if they acted in concert to a change a first bag fee, in which case either neither would risk losing sales to the other and both would profit.

30. As a publicly traded corporation, defendant AirTran holds a conference call with securities analysts on a quarterly basis. Anyone may listen to the call live or may listen to an archived version via defendant AirTran's website. Transcripts of the calls are also publicly available.

31. A corporation's quarterly analyst calls are typically maintained by its competitors. In this instance, defendants used these calls to signal actions to their competitors.

32. An agreement between the two airlines was reached in or around November 2008, after defendant AirTran offered and defendant Delta accepted, an invitation to collude.

33. Upon information and belief, defendant AirTran executives were aware defendant Delta representatives monitor their calls with securities analysts. Defendant AirTran thus used an October 2008 call with analysts to communicate to defendant Delta an invitation to collude on the imposition of a first bag fee. On the call, defendant AirTran's CEO and President, Robert Fornaro, stated defendant AirTran wanted to

implement a first bag fee, defendant AirTran had invested in the technological capability to quickly implement the fee and defendant AirTran would implement the fee if defendant Delta acted first.

34. Defendant AirTran's statement was not marketplace guidance to its investors, nor was it a pro-competitive statement, but rather a specific invitation to defendant Delta to collude on the joint implementations of a first bag fee.

35. Defendant Delta promptly accepted defendant AirTran's invitation to collude. And within a couple of weeks after Mr. Fornaro's invitation, defendant Delta issued a press release announcing it would begin charging passengers a $15 first bag fee within thirty days of its announcement.

36. On or about November 6, 2008, defendant Air Tran issued a public statement it would follow and adopt defendant Delta first bag fee. Defendant AirTran's spokesman, Judy Graham-Weaver, stated defendant AirTran would likely make an announcement regarding a new first bag fee policy the following week. True to its word, on or about November 12, 2008, defendant AirTran announced it would impose a $15 first bag fee, effective, December 2008. This was the same fee as defendant Delta's with the same effective date.

37. Upon information and belief, both defendants recognize their collusion has created substantial legal risk and they have sought to minimize this risk.

38. In an effort to hide the true purpose of imposing the $15 first bag fee, defendant Delta issued a press release stating the fee was being imposed to confirm it's pricing to Northwest's. Having previously rejected imposing a first bag fee to confirm its prices to Northwest's, this explanation was simply a pretext for the actual impetus; knowing its principal competitor would follow suit.

39. Unlike the named defendants herein, defendant Delta and Northwest were not direct competitors. Neither Northwest nor defendant Delta constrained the pricing of the other. Moreover, defendant Delta's acquisition of Northwest did not necessitate the companies confirm first bag fees, as evidenced by the fact that (a) the organizations

remain separate; and (b) defendant Delta had "studied" a first bag but did not plan to charge one even after it announced its acquisition of Northwest.

40.     During the first quarter of 2009, defendant Delta earned over $150 million in baggage fee revenues, the vast majority of which, upon information and belief, consists of first bag fee revenues. Price increases of this magnitude do not occur simply by "conforming" pricing practices to a non-competing airline's, as defendant Delta publicly announced. Otherwise, defendant Delta would have "conformed" its pricing practices with those of Northwest much earlier and earned much more money in baggage fees. Rather, defendant Delta imposed its first bag fee only after its primary competitor (defendant AirTran) assured defendant Delta it would follow defendant Delta's lead.

41.     After implementing their first bag fee assessment through collusion, both defendants Delta and AirTran subsequently adhered to strict antitrust compliance practices to avoided implementation of the first bag fee together. During an April 2009 analyst call, defendant Delta's CEO did not respond when asked whether the airline was considering implementing additional baggage fees in the future. However, the reality was that defendant Delta was considering implementing additional baggage fees in the future. And he declined to respond because his general counsel advised that public statements of future pricing decisions comply with Department of Justice and Department of Transportation policies, rules and regulations.

42.     Similarly in the spring of 2009, defendant AirTran demonstrated a reluctance that did not exist in or around October 2008, to publicly share competitively sensitive information. Defendant AirTran's most recent description on an analyst call of additional "ancillary revenue initiatives" demonstrates a new-found commitment to compliance with Department of Justice and Department of Transportation policies, rules and regulations. During this call, defendant AirTran even expressed "concern" the airline "industry has a habit of being very self destructive by sharing too much information with your competition." Arne Haak, Senior Vice President of Finance, Treasurer and Chief Financial Officer, Q1 Earnings Call (April 22, 2009). Had defendant AirTran been

similarly sensitive to the sharing information with its competition in the fall of 2008, consumers who fly on defendants would not have had to pay a $15 first bag fee.

### Antitrust Injury

43. Defendants' unlawful conduct has had direct, substantial and adverse effects on competition by foreclosing competition on the basis of price. But for defendants' unlawful conduct, defendants would not have charged first bag fees to plaintiff and the class members.

44. As a direct consequence of defendants' illegal acts, plaintiff and the class members have sustained losses and damages to their business and property in the form of overcharges for first bag fees.

45. Plaintiff and the class members are threatened with further inquiry unless defendants are enjoined from continuing the unlawful conduct alleged herein and from entering into any other combinations, conspiracies and or agreements having similar purposes and effects. All of class members were affected in the same manner by defendants' unlawful conduct.

### Class Action Allegations

46. Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:
> All persons or entities in the United States that directly paid Delta and or AirTran first bag fees on domestic flights beginning December 5, 2008 and continuing until the effects of Delta and AirTran's anticompetitive conspiracy ceases. Excluded from this class are the court and its officers, employees and relatives; defendants, their parents, subsidiaries, affiliates and co-conspirators; and the federal government.

47. Class members are so numerous and geographically dispersed across the United States that joinder is impracticable. While the exact number of class members is unknown to plaintiff, it is believed to be in the thousands. Furthermore, the class is readily identifiable from information and records in possession of the defendants.

48. Questions of law and fact common to class members predominate over questions, if any, that may affect only individual class members because defendants have acted on grounds generally applicable to the class members. Such generally applicable conduct is acted on grounds generally applicable to the class members. Such generally applicable conduct is inherent in defendants' wrongful conduct. Among those common questions of law or fact are:

(a) Whether the defendants conspired to fix, raise, maintain, or stabilize prices for first bag fees;

(b) The existence and duration of the illegal conspiracy alleged herein;

(d) Whether defendants conspired to conceal their unlawful activities;

(d) Whether the conspiracy resulted in the implementation of the first bag fees;

(e) Whether the conspiracy caused the prices for first bag fees to be higher than they would have been in the absence of defendants' conduct;

(f) Whether defendants' conduct violates the Clayton and Sherman Acts;

(g) Whether plaintiff and other class members have sustained or continue to sustain damages as a result of defendants wrongful conduct and if so, the proper measure and appropriate formula to be applied in determining such damages;

(h) Whether plaintiff and the other class members are entitled to an award of compensatory, treble and or punitive damages and, if so, in what amount; and

(i) Whether plaintiff and the other class members are entitled to injunctive or other inequitable relief.

49. Plaintiff is a class member and plaintiff's claims are typical of the claims of the class members. Plaintiff and all class members were damaged by the same wrongful conduct by the defendants, *i.e.*, they have paid first bag fees because of defendants' wrongful conduct.

50. Plaintiff will fairly and adequately protect the interests of other class members because it has no interest that is antagonistic to and or which conflicts with those of any other class member and plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in litigation of this nature to represent plaintiff and other class members.

51. The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for defendants.

52. Defendants have acted or refused to act on grounds generally applicable to the class members, thereby rendering injunctive or declaratory relief with respect to the class as a whole appropriate.

53. This class action is the superior method for the fair and efficient adjudication of this controversy. Class treatment will permit a large, number of similarly-situated persons and or entities to prosecute their claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individuals' actions would produce. The damages sustained by individual class members, although meaningful, do not rise to the level where they would have a significant interest in controlling the prosecution of separate actions against these well-financed corporate defendants.

54. The instant case will be eminently manageable as a class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## CAUSE OF ACTION

### Conspiracy to Restrain Trade in Violation of Sherman Act § 1

55. Plaintiff repeats and realleges the allegations in Paragraphs 1 – 54 above as if fully set forth herein.

56. Defendants entered a conspiracy in restraint of trade and commerce, the purpose and effect of which was to unreasonably fix or raise first bag fees in the domestic

airline passenger service market served by defendants and or submarkets for flights originating or terminating at Atlanta Hartsfield-Jackson Airport. The conspiracy consists of a continuing agreement, understanding and concern of action among defendants.

57. The collusion commenced in or aroused October 2008 and the collusive acts were implemented December 5, 2008.

58. The acts done by each of the defendants as part of and in furtherance of, their conspiracy were authorized, ordered, or done by their officers, agents, employees, affiliates, owners, or representatives while actively engaged in the management of defendants' affairs.

59. Defendants' practices constitute an unreasonable restraint on competition, the effects of which are anticompetitive. Defendants' actions lack any legitimate business justification and any purported business justification are pretextual.

60. Defendants' unlawful conduct substantially and adversely affects interstate commerce in the relevant market and submarkets.

61. Defendants, by and through their anticompetitive actions as outlined herein, have violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Without limitation, defendants' conspiracy constitutes a *per se* violation of the Sherman Act.

62. As a direct and proximate result of defendants' violations of the Sherman Act, plaintiff and the class members have been harmed in an amount to be proved at trial. Plaintiff and the class members are threatened with further injury unless defendants are enjoined from continuing the unlawful conduct alleged herein and from entering into any other combinations, conspiracies or agreements having similar purposes and effects. All class members paid overcharges as a result of defendants' unlawful conduct and thus were affected in the same manner by defendants' illegal conduct.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff individually and on behalf of the class, demands a trial by jury of all claims asserted in this complaint.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests entry of judgment:

(a)     Certifying that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appointing plaintiff as a class representative and her counsel as lead class counsel;

(b)     (Directing that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be given to class members;

(c)     Awarding plaintiff and the class members its full monetary damages to be proven at trial;

(d)     Awarding plaintiff and the class members treble their monetary damages, pursuant to 15 U.S.C. § 15;

(e)     Awarding plaintiff and the class members pre-and post judgment interest on their damages;

(f)     Awarding plaintiff and the class members the costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. § 15;

(g)     Enjoining defendants from continuing or resuming their unlawful and anticompetitive practices; and

(h)     Awarding plaintiff and the class members such other and further relief as the court deems just and proper.

Dated: 2/5/2010

AMAMGBO & ASSOCIATES
THE TERRELL LAW GROUP

By: _____
        REGINALD TERRELL, ESQ.

CLASS ACTION COMPLAINT                                                                 13